IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

TAMIKA WILLIAMS,                    *
                                    *
        Plaintiff,                  *       CIVIL ACTION NO. 15-00130-B
                                    *
vs.                                 *
                                    *
CAROLYN W. COLVIN,                  *
Commissioner of Social              *
Security,                           *
                                    *
        Defendant.                  *

## ORDER

Plaintiff Tamika Williams (hereinafter "Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* On June 8, 2016, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 21). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

## I.   Procedural History

Plaintiff filed her application for benefits on March 1, 2012. (Tr. 154). Plaintiff alleged that she has been disabled

since February 2012,[1] due to diabetes, chronic back pain, bulging disc, pinched nerve, panic attacks, and depression. (Id. at 43, 176).

Plaintiff's application was denied and upon timely request, she was granted an administrative hearing before Administrative Law Judge Bruce MacKenzie (hereinafter "ALJ") on August 5, 2013. (Id. at 40). Plaintiff attended the hearing with her counsel and provided testimony related to her claims. (Id. at 45). A vocational expert ("VE") also appeared at the hearing and provided testimony. (Id. at 66). On September 26, 2013, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Id. at 18). The Appeals Council denied Plaintiff's request for review on January 16, 2015. (Id. at 1-2). Therefore, the ALJ's decision dated September 26, 2013, became the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). The parties waived oral argument on June 8, 2016 (Doc. 20), and agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. Issues on Appeal

**1. Whether the ALJ erred in rejecting the**

---

[1] Plaintiff amended her onset date from January 1, 2009, to February 20, 2012. (Tr. 43).

> opinions of Plaintiff's treating
> physician, Dr. Judy C. Travis, M.D.?

> 2. Whether the ALJ erred in evaluating
> Plaintiff's complaints of pain?

## III. Factual Background

Plaintiff was born on January 2, 1979, and was thirty-four years of age at the time of her administrative hearing on August 5, 2013. (Tr. 40, 173). Plaintiff passed her high school exit exam but lacked one class credit and did not receive her diploma. (Id. at 47, 177). Plaintiff's past work includes working as a babysitter in 2009, working as a packer at a fish plant from 2005 to 2008, and working as a packer in a poultry processing plan from 1998 to 2001. (Id. at 48-49, 177). Plaintiff stopped working in 2008 (except for babysitting) to take care of her children. (Id. at 177, 240, 251).

At her hearing on August 5, 2013, Plaintiff testified that she can no longer work because of depression and diabetes. (Id. at 49). She testified that she takes insulin shots, as well as other medication for her diabetes, high blood pressure, and depression. (Id. at 50). According to Plaintiff, the medication helps, but it makes her dizzy. (Id.). She also has back pain but has not had any physical therapy or surgery to treat her condition. (Id. at 51). She has received steroid

shots for her back, but they did not help.[2]  (Id. at 51).  She sometimes wears a back brace that she bought over the counter, and it helps.  (Id. at 51).  Pain medications provide temporary relief.  (Id. at 54).

With respect to her depression, Plaintiff takes medication and goes to therapy every other month.  (Id. at 52).  Plaintiff testified that she has crying spells every other day and panic attacks every day, as well as insomnia and occasional thoughts of harming herself.  (Id. at 64).  She has had no hospitalizations related to depression or any medical condition. (Id. at 51-52).  Plaintiff testified to no other medical problems that prevent her from working.  (Id.).

Plaintiff testified that she lives alone in an apartment with her two children, ages ten and eleven.  (Id. at 46).  Her sister does all of her cooking, laundry, and grocery shopping, and her sister and children do all of the housework.  (Id. at 59).  She does not get out of the house, does not go anywhere, and does not visit with anyone except her sister.  (Id.).  She can drive, but her license is suspended because of a ticket. (Id. at 47).

_____

[2] Plaintiff rated her back pain as a seven or eight on a ten-point pain scale with medication and a ten without medication.  (Tr. 61-62).  She declined epidural injections for her back pain because she was afraid of the procedure.  (Id. at 61).

## IV.  Analysis

### A.  Standard of Review

In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[3]  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.  Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion.").  In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision.  Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4

---

[3] This Court's review of the Commissioner's application of legal principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

(S.D. Ala. June 14, 1999).

### B. Discussion

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability.[4] 20 C.F.R.

---

[4] The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. Id. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the

§§ 404.1520, 416.920.

In the case *sub judice*, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since February 20, 2012, her application date, and that she has the severe impairments of obesity, diabetes mellitus Type II, degenerative disc disease of the lumbar spine, asymmetric right sided disc bulge at L4-L5 without canal stenosis, adjustment disorder with disturbance of mood, panic disorder with agoraphobia, depressive disorder not otherwise specified, and Cluster B personality features.[5] (Tr. 20). The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1.[6] (Id. at 21).

The ALJ concluded that Plaintiff retains the residual functional capacity (hereinafter "RFC") to perform a range of

_____

claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

[5] The ALJ found Plaintiff's hypertension to be non-severe. (Tr. 21).

[6] The ALJ concluded that Plaintiff has only mild restrictions in activities of daily living, moderate difficulties in social functioning and concentration, persistence or pace, and no episodes of decompensation. (Tr. 22).

light work, except that "she would require a sit/stand option to relieve pain and discomfort and she can ambulate short distances of up to 75 yards. She could frequently use foot controls and frequently reach overhead. She could never climb ramps, stairs, ladders or scaffolds. She can frequently balance and crouch but only occasionally stoop and kneel but never crawl. She could never be exposed to dangerous machinery, dangerous tools, hazardous processes or unprotected heights. She could never operate a commercial motor vehicle. She can be frequently exposed to extreme cold, extreme heat, wetness, humidity, atmospheric conditions and weather. She can be occasionally exposed to vibration. She should never be exposed to concentrated dust, fumes, gases or other pulmonary irritants. She can be exposed to moderate noise levels. She could only remember short, simple instructions and would be unable to deal with detailed instructions. She is able to do simple routine, repetitive tasks but would be unable to do detailed or complex tasks. She would be limited to simple work-related decisions. She would be able to accept constructive non-confrontational criticism, work in small group settings and be able to accept changes in the workplace setting if introduced gradually and infrequently. She would be unable to work at a production rate pace but could perform goal-oriented work. Any time off task by the claimant could be accommodated by normal breaks." (Id. at

23).

The ALJ also determined that while Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of the alleged symptoms were only partially credible for the reasons explained in the decision. (Id. at 26). The ALJ found that Plaintiff is unable to perform any of her past relevant work as a packer (unskilled, medium), hand fish filleter (unskilled, medium), and baby sitter (semi-skilled, medium). (Id. at 35). However, utilizing the testimony of a VE, the ALJ concluded that considering Plaintiff's residual functional capacity for a range of light work, as well as her age, education and work experience, there are jobs existing in the national economy that Plaintiff is able to perform, such as a "garment folder," "office helper," and "mail clerk/sorter," all of which are classified as unskilled and light. (Id. at 36). Thus, the ALJ concluded that Plaintiff is not disabled. (Id.).

The Court now considers the foregoing in light of the record in this case and the issues on appeal.

  1. **Issue**

  A. **Whether the ALJ erred in rejecting the opinions of Plaintiff's treating physician, Dr. Judy C. Travis, M.D.?**

In this case, Plaintiff argues that the ALJ erred in rejecting the opinions of her treating physician, Dr. Judy C. Travis, M.D., set forth in a Medical Source Statement Physical (MSS) form and a Clinical Assessment of Pain (CAP) form completed on July 17, 2013. (Doc. 13 at 4-5). In the forms, Dr. Travis opined that, because of Plaintiff's diabetes, lumbar disk disease, and anxiety, she has the following limitations: she can sit for only four hours in an eight-hour work day; she can stand/walk for less than one hour in an eight-hour work day; she can lift only five pounds frequently; she would miss work more than three times in a month; her pain is present to such an extent as to be distracting to the adequate performance of daily activities; physical activity would greatly increase her pain to such a degree as to cause distraction from task or total abandonment of task; prescribed medications could cause significant side effects that may limit her performance of everyday tasks; and her pain is so severe as to prevent her from maintaining concentration, persistence, or pace for periods of at least two hours. (Id. at 5; Tr. 330-31).

The Commissioner counters that the medical evidence does not support Dr. Travis' opinions set forth in the MSS and CAP forms. The Commissioner also contends that Dr. Travis' opinions are inconsistent with the substantial evidence in the case; thus, they were properly discredited by the ALJ. (Doc. 18 at

3-6). The Commissioner further argues that the ALJ's RFC assessment is supported by the substantial evidence in the case. (Id. at 3). Having carefully reviewed the record in this case, the Court finds that Plaintiff's claim is without merit.

As part of the disability determination process, the ALJ is tasked with weighing the opinions and findings of treating, examining, and non-examining physicians. In reaching a decision, the ALJ must specify the weight given to different medical opinions and the reasons for doing so. See Winschel v. Commissioner of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011). The failure to do so is reversible error. See Williams v. Astrue, 2009 U.S. Dist. LEXIS 12010, *4, 2009 WL 413541, *1 (M.D. Fla. 2009).

When weighing the opinion of a treating physician, the ALJ must give the opinions "substantial weight," unless good cause exists for not doing so. Costigan v. Commissioner, Soc. Sec. Admin., 2015 U.S. App. LEXIS 2827, *10, 2015 WL 795089, *4 (11th Cir. Feb. 26, 2015) (citing Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004) and Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985)). The opinion of "a one-time examining physician — or psychologist," on the other hand, is not entitled to the same deference as a treating physician. Petty v. Astrue, 2010 U.S. Dist. LEXIS 24516, *50, 2010 WL 989605, *14 (N.D. Fla. Feb. 18, 2010) (citing Crawford,

363 F.3d at 1160).  An ALJ is also "required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.'"  Milner v. Barnhart, 275 Fed. Appx. 947, 948 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1527(f)(2)(i)).  "The ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources."  Id. (citing Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991)).

Whether considering the opinions of treating, examining, or non-examining physicians, good cause exists to discredit the testimony of *any* medical source when it is contrary to or unsupported by the evidence of record.  Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004).  "Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence."  Hogan v. Astrue, 2012 U.S. Dist. LEXIS 108512, *8, 2012 WL 3155570, *3 (M.D. Ala. 2012). The ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion."  Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (citation omitted); Adamo v. Commissioner of Soc. Sec., 365 Fed. Appx. 209, 212 (11th Cir. 2010) (The ALJ may reject any medical

opinion if the evidence supports a contrary finding.).

In support of her argument that the ALJ erred in discrediting[7] Dr. Travis' opinions that her limitations from her diabetes, lumbar disk disease, and anxiety preclude her from working, Plaintiff points to the following evidence which she alleges establishes her disability:

(1) From 2000 to 2013, Plaintiff was treated by Dr. Edgar Brown, M.D., for back and neck pain and diabetes, for which Dr. Brown prescribed medications and administered injections. Dr. Brown also ordered an MRI in 2011 that showed a right-sided disk bulge at L4-5. Dr. Brown referred Plaintiff to a specialist, Dr. Wesley Spruill, M.D., at the Spine Care Center, who Plaintiff saw on March 15, 2012. (Doc. 13 at 1-2, Tr. 220-37, 234-35, 247-49, 256, 272-312, 345-57);

(2) In 2010, Plaintiff was treated on one occasion by Dr. Bruce Taylor, M.D., for pain, paresthesia, and radiculopathy in her back, neck, and shoulder. Dr. Taylor gave Plaintiff a Depo-Medrol injection and prescribed Flexeril and Ultram. Plaintiff did not return for further treatment. (Doc. 13 at 2; Tr. 214-18);

(3) On February 2, 2012, Plaintiff was examined at the

---

[7] The record shows that the ALJ assigned "some weight" to portions of Dr. Travis' opinions contained in her treatment records but not to those expressed in the MSS and CAP forms. (Tr. 34).

request of the Agency by consultative physician, Dr. Stephen J. Robidoux, M.D., who diagnosed "diabetes type two NOT on insulin" and opined that Plaintiff had a "normal examination for her age." (Doc. 13 at 2; Tr. 239-242). Dr. Robidoux's physical examination findings showed normal unaided gait, normal heel and toe walking, able to squat and raise, and normal neuromuscular findings. (Tr. 241-42). Dr. Robidoux also noted no hospitalizations, no surgery, no physical therapy, no chiropractic care, and no epidural blocks for her alleged of back pain. (Id. at 242). He noted an abnormal MRI "without radiculopathy or any other positive physical findings and a normal physical examination for her age." (Id.). He further noted that Plaintiff was taking only a low dose of NSAIDs for pain. (Id.). Dr. Robidoux assessed no functional limitations whatsoever, concluding that Plaintiff had "NO limitations for her age to any activities including, sitting, standing, walking, lifting, carrying, climbing, squatting, bending, kneeling, crawling, using hand and foot controls, handling objects, speaking, listening or travel" (id.);

(4) On March 15, 2012, Plaintiff saw Dr. Wesley L. Spruill, M.D., at the Spine Care Center. (Doc. 13 at 2; Tr. 256-61). Dr. Spruill's physical examination findings showed increased pain with flexion at 60 degrees and tenderness to palpation in the mid lumbosacral region. Dr. Spruill found no numbness or

weakness in Plaintiff's legs, but tingling in both legs, which Plaintiff reported was alleviated with medication. (Id. at 257). Plaintiff's lumber exam was largely "normal," with the exception of "tenderness" in the mid lumbosacral region, with no pain in the cervical or thoracic regions, the sacroiliac joint, or bilateral facets. (Id. at 260). She had no swelling or atrophy in the upper or lower extremities. (Id.). She had normal range of motion, strength, and sensation in the upper extremities bilaterally. (Id.). She had 4/5 grasp strength in both hands and 4/5 muscle strength in both legs. (Id.). She had normal patellar reflex in both knees. (Id.). She had no pain in her hips during range of motion. (Id. at 261). She had a positive straight leg raise in the right leg at sixty degrees. (Id.). She described her sleep as "fair," reporting that she averages seven hours of sleep each night. (Id. at 257). She was alert and oriented and denied anxiety, depression, nervousness, or mood swings. (Id. at 259). Dr. Spruill diagnosed Plaintiff with low back pain, L4-5 herniation, persistent pain, and failure of conservative treatment. (Id. at 261). He recommended an epidural steroid injection and physical therapy, both of which Plaintiff declined. (Id.). Plaintiff never returned for further treatment;

(5) On April 25, 2012, Plaintiff was examined at the request of the Agency by consultative psychologist, Dr. Nina E.

Tocci, Ph.D., whose comprehensive mental status examination findings revealed "appropriate, normal, and stable" mood and affect and thought content; oriented to time, place, person, and situation; "fair" attention and concentration; fair social judgment; some insight; and ability to abstract intact. However, Plaintiff was not able to calculate change or perform multiplication problems and could not perform serial threes backward or serial fours forward; she could not name five famous people; and she could not spell "world" or "earth" backward. She was able to identify the current and immediate past president. She demonstrated a "good" fund of information and comprehension. Dr. Tocci opined that Plaintiff was functioning in the low average range of intellectual ability and diagnosed her with Adjustment Disorder with Disturbance of Mood, finding that her prognosis was guarded. Dr. Tocci found that Plaintiff was in no distress and opined that she would benefit from obtaining her GED and job training.[8]  (Doc. 13 at 3; Tr. 251-53);

(6) From August 1, 2012, to October 22, 2013, Plaintiff saw a psychiatrist, Dr. Timothy Baltz, M.D., at Cahaba Mental Health Center, who diagnosed her with Panic Disorder with Agoraphobia, Depressive Disorder, and Cluster B Personality features.  (Id. at 327).  Plaintiff reported multiple daily panic attacks

---

[8] Plaintiff reported to Dr. Tocci that the reason that she stopped working was because of child care issues.  (Tr. 251).

lasting about three minutes, suicidal thoughts with no attempts, and a reluctance to be around people. (Id. at 264-65, 327). Dr. Baltz prescribed medication and counseling. (Id.). At no time did Dr. Baltz assign any functional limitations as a result of Plaintiff's mental condition. (Doc. 13 at 3; Tr. 264-68, 326-28, 360-61); and

(7) On three occasions from May 13, 2012, to July 17, 2013, Plaintiff saw physician, Dr. Judy C. Travis, M.D., who diagnosed her with diabetes, anxiety, hypertension, displaced lumbar disk, and joint pain and treated her with medications. (Doc. 13 at 4; Tr. 330-43). On Plaintiff's first visit on May 13, 2013, Dr. Travis completed a physical examination and found a "symmetrical" musculoskeletal system with "no deformities," "no swelling," "good muscle mass bilaterally," "full range of motion of all joints," "all muscles functioning well," and "no atrophy." (Id. at 341). Plaintiff's blood glucose level was 262. (Id.). Plaintiff returned on May 28, 2013, for a medication follow up. (Id. at 338). On her third visit on July 17, 2013, Dr. Travis completed MSS and CAP forms, opining that Plaintiff's uncontrolled diabetes, lumbar disk disease, and anxiety prevent her from working. (Id. at 330-31). Dr. Travis' physical examination findings on that date were unremarkable except for notations that Plaintiff had "pain in arms and legs," "decreased movement of upper body due to muscle pain" and

"tender[ness]" in her neck. (Id. at 334-35).

Contrary to Plaintiff's argument, the evidence detailed above does not support Dr. Travis' opinions set forth in the MSS and CAP forms that Plaintiff is unable to work because of disabling diabetes, lumbar disk disease, and anxiety. Plaintiff's evidence shows nothing more than conservative treatment of her conditions with medication, with no physical therapy, no epidural injections, no chiropractic care, and no surgeries for her back, as well as no hospitalizations[9] related to any of her medical conditions.

With respect to Plaintiff's back, her 2011 MRI shows a right-sided disk bulge at L4-5; yet, Plaintiff declined treatment with epidural steroid injections or even physical therapy, choosing only conservative treatment with medication. (Id. at 261). Curiously, Dr. Travis' own examination findings on the date that she completed the MSS and CAP forms reflect nothing more than "pain in arms and legs," "decreased movement of upper body due to muscle pain" and "tender[ness]" in her neck. (Id. at 334-35). Even more curious, on May 13, 2013, Dr.

---

[9] The record reveals one emergency room visit on March 2, 2013, in which Plaintiff complained of back pain, which she rated as a nine on a ten-point pain scale. (Tr. 314). Upon examination, the emergency room physician noted that she was in "no acute distress," and his findings related to her neck, back, and extremities were completely normal. (Tr. 316, 318). She was prescribed Lortab and Bactrim and discharged in "good" condition. (Id. at 320).

18

Travis noted a "symmetrical" musculoskeletal system with "no deformities," "no swelling," "good muscle mass bilaterally," "full range of motion of all joints," "all muscles functioning well," and "no atrophy." (Id. at 341). All of these findings are inconsistent with the severity of the opinions set forth in the MSS and CAP forms.

In addition to being inconsistent with her own treatment records, Dr. Travis' opinions are inconsistent with the opinions of one-time examining physician, Dr. Spruill, whose physical examination findings were largely normal, with the exception of "tenderness" in the lumbosacral region. (Id. at 260). Dr. Spruill further noted that Plaintiff denied any nervousness, anxiety, mood swings, or depression. (Id. at 259). He recommended epidural steroid injections and physical therapy, both of which Plaintiff declined, and he assigned no functional limitations whatsoever. (Id. at 261).

Dr. Travis' opinions are also inconsistent with the opinions of consultative physician, Dr. Robidoux, whose examination findings were largely "normal" and who opined that Plaintiff had a "normal examination for her age," with no limitations whatsoever. (Id. at 239-242).

Dr. Travis' opinions are inconsistent with the opinions of consultative psychologist, Dr. Tocci, who diagnosed Plaintiff with Adjustment Disorder with Disturbance of Mood but opined

that she would benefit from obtaining her GED and job training. (Id. at 251-53).

Dr. Travis' opinions are inconsistent with the treatment records of treating psychiatrist, Dr. Baltz, who diagnosed Plaintiff with Panic Disorder with Agoraphobia, Depressive Disorder, and Cluster B Personality features, but treated her conservatively with prescribed medications and assigned no functional limitations. (Id. at 327).

Because Dr. Travis' opinions in the MSS and CAP forms are inconsistent with her own treatment records, as well as the remaining substantial evidence in this case detailed above, the ALJ had good cause to discredit those opinions. In addition, the Court finds, based upon the evidence detailed above, that substantial evidence supports the ALJ's RFC assessment for a range of light work, with the stated restrictions. (Id. at 23). Accordingly, Plaintiff's claim must fail.[10]

---

[10] The Court notes that Plaintiff also submitted additional records from Dr. Baltz, Dr. Travis, Vaughn Regional Medical Center, and Bryan Whitfield Memorial Hospital to the Appeals Council *after* the date of the ALJ's decision on September 26, 2013, which the Appeals Council reviewed and found did not warrant remand. (Id. at 4-5). Of particular note in the new evidence is a lumbar spine bone scan dated January 10, 2014, which was "normal," and a lumbar spine MRI dated December 2, 2013, which showed a "dehydrated" disc at L4-5 with a "small" posterior annular tear associated with a "very small" posterior protrusion at L5-S1, without spinal stenosis. (Id. at 394-95, 400). Although Plaintiff has not alleged any error related to the Appeals Council's review of the records, the Court has nonetheless reviewed the records and finds nothing in the

## B. Whether the ALJ erred in evaluating Plaintiff's complaints of pain?

Next, Plaintiff argues that the ALJ erred in failing to properly evaluate her complaints of pain pursuant to SSR 96-7p.[11]

---

records to suggest that Plaintiff's back pain, diabetes, anxiety, or any other impairment is disabling. To the contrary, the Court finds that the additional medical records are cumulative of the treatment records considered by the ALJ and reflect nothing more than ongoing treatment of the same medical conditions considered by the ALJ. For this reason, they would not have changed the administrative outcome and, thus, do not warrant a remand for further consideration of the evidence. See Ingram v. Commissioner of Soc. Sec. Admin., 496 F.3d 1253, 1261-62 (11th Cir. 2007) ("[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous."); Caulder v. Bowen, 791 F. 2d 872, 877 (11th Cir. 1986) (new evidence is material if it is "relevant and probative so that there is a reasonable possibility that it would change the administrative outcome.").

[11] Plaintiff refers to the following language in SSR 96-7p:

Assessment of the credibility of an individual's statements about pain or other symptoms and about the effect the symptoms have on his or her ability to function must be based on a consideration of all of the evidence in the case record. This includes, but is not limited to:

The medical signs and laboratory findings;

Diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and

Statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's

(Doc. 13 at 11). Specifically, Plaintiff argues that Dr. Spruill's medical records, which show "pain with flexion, tenderness to palpation and reduced strength on examination," and Dr. Travis' medical records, which "repeatedly" show "decreased movement of the upper body due to muscle spasms," constitute "medical signs" which satisfy the pain standard and establish her disability. (Id.).

The Commissioner counters that the ALJ reasonably evaluated all of the evidence of record, including Plaintiff's subjective complaints of pain, that the ALJ identified valid reasons for discounting Plaintiff's subjective statements, and that the ALJ's credibility evaluation is supported by substantial evidence. (Doc. 18 at 6). Having carefully reviewed the record in this case, the Court finds that Plaintiff's claim is without merit.

When evaluating a claim based on disabling subjective symptoms, the ALJ considers medical findings, a claimant's statements, statements by the treating physician or other persons, and evidence of how the pain (or other subjective symptoms) affects the claimant's daily activities and ability to work. 20 C.F.R. § 416.929(a). In a case where a claimant

---

symptoms and how the symptoms affect the individual's ability to work.

SSR 96-7p, 1996 SSR LEXIS 4, 1996 WL 374186, *5.

attempts to establish disability through his or her own testimony concerning pain or other subjective symptoms, a three-part standard applies. That standard requires: "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain [or other subjective symptoms] arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain [or other subjective symptoms]." Hubbard v. Commissioner of Soc. Sec., 348 Fed. Appx. 551, 554 (11th Cir. 2009) (unpublished) (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). The Social Security regulations further provide:

> [S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.

20 C.F.R. 404.1529(a) (2013).

"A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient

to support a finding of disability." Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995). Stated differently, "if a claimant testifies to disabling pain [or other subjective symptoms] and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited." Reliford v. Barnhart, 444 F. Supp. 2d 1182, 1186 (N.D. Ala. 2006). Therefore, once the determination has been made that a claimant has satisfied the three-part standard, the ALJ must then turn to the question of the credibility of the claimant's subjective complaints. See id., 444 F. Supp. 2d at 1189 n.1 (the three-part standard "is designed to be a threshold determination made prior to considering the plaintiff's credibility."). If a claimant does not meet the standard, no credibility determination is required. Id.

In assessing a claimant's credibility, the ALJ must consider all of the claimant's statements about his symptoms and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. See 20 C.F.R. § 404.1528. Such credibility determinations are within the province of the ALJ. Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005). However, if an ALJ decides not to credit a claimant's testimony about his or her subjective symptoms, "the ALJ must articulate explicit and adequate reasons for doing so or the record must be obvious as to the credibility

finding." Strickland v. Commissioner of Soc. Sec., 516 Fed. Appx. 829, 832 (11th Cir. 2013) (unpublished) (citing Foote, 67 F.3d at 1562); see also Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court). Failure to articulate the reasons for discrediting testimony related to pain or other subjective symptoms requires, as a matter of law, that the testimony be accepted as true. Holt, 921 F.2d at 1223.

The Eleventh Circuit has held that the determination of whether objective medical impairments could reasonably be expected to produce the pain or other subjective symptoms is a factual question to be made by the Secretary and, therefore, "subject only to limited review in the courts to ensure that the finding is supported by substantial evidence." Hand v. Heckler, 761 F.2d 1545, 1549 (11th Cir. 1985), *vacated on other grounds and reinstated sub nom.*, Hand v. Bowen, 793 F.2d 275 (11th Cir. 1986). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Nye v. Commissioner of Social Sec., 524 Fed. Appx. 538, 543 (11th Cir. 2013) (unpublished).

In this case, assuming *arguendo*, that Plaintiff has satisfied the threshold three-part pain standard, the ALJ found that Plaintiff's testimony regarding the intensity, persistence,

and limiting effects of her symptoms was "not entirely credible" based on the inconsistency between her testimony and the other record evidence. (Id. at 26). The record evidence, detailed above, confirms the ALJ's findings that all of Plaintiff's symptoms (including pain) have been treated with medication only; that while an MRI has shown that she has a bulging disk at L4-5, she has declined epidural injections and physical therapy; that she has never sought alternative treatment, such as chiropractic care, for her back pain; that no medical source has ever recommended surgery for any of her medical conditions; that she has never been hospitalized as a result of any of her medical conditions; that, other than Dr. Travis (whose opinion has been discredited), no treating or examining physician has ever opined that she is unable to work due to a physical or mental condition or imposed any functional limitations; and that Plaintiff herself stated that she stopped working because of child care issues. (Id. at 26-35).

In addition, the ALJ observed that, during Plaintiff's administrative hearing, Plaintiff showed "no evidence of pain or discomfort while testifying at the hearing," that she "walked in and out with no apparent gait disturbance," that she "sat down and arose without issue," that she "sat for 45 minutes or more without any distress evident," and that she "bent over twice

during the hearing to her right to pick papers off the floor and she did so easily." (Id. at 32).

After a careful review of the record, the Court finds that the ALJ's credibility finding is supported by substantial evidence and that his reasons for discrediting Plaintiff's testimony were sufficiently articulated in the decision. See 20 C.F.R. § 404.1529(c)(2)-(4); (Tr. 26-35). As previously noted, this Court may not decide the facts anew, reweigh the evidence, or substitute its judgment but must accept the factual findings of the Commissioner where they are supported by substantial evidence and based upon the proper legal standards. See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) ("the findings and decision of the Secretary are conclusive if supported by substantial evidence."); accord Hand, 761 F.2d at 1549. Accordingly, Plaintiff's claim must fail.

## V.    Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for supplemental security income be **AFFIRMED.**

**DONE** this **23rd** day of **September, 2016.**

　　　　　　　　　　　　　　　　　　　　　　　　　　　/s/ SONJA F. BIVINS
　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE